**STATE of Iowa, Appellee,**

v.

**Claire Wesley MASON, Sr., Appellant.**

No. 55537.

Supreme Court of Iowa.

Dec. 20, 1972.

Rehearing Denied Jan. 10, 1973.

Frank M. Krohn, Newton, for appellant.

Richard C. Turner, Atty. Gen., Fred M. Haskins, Asst. Atty. Gen., and Dennis Chalupa, Newton, County Atty., for appellee.

Heard before MOORE, C. J., and Le-GRAND, UHLENHOPP, REYNOLDSON and McCORMICK, JJ.

REYNOLDSON, Justice.

Defendant was tried, convicted and sentenced in Jasper district court for false uttering of check and for being an habitual criminal. We affirm.

December 18, 1971, defendant gave Axtell Ford of Newton, Iowa, a check for $750 in full payment for a 1964 Oldsmobile auto. He accepted delivery of the car and drove it away.

The check was drawn on Hayesville Savings Bank which promptly refused payment. The largest balance defendant had ever carried in the Hayesville bank was $105. For several years before this incident his dormant account had a credit of only $2.27.

I. Defendant asserts trial court erred in overruling his pretrial motion to dismiss based on a failure to indict within thirty days, in violation of § 795.1, The Code. No issue is raised relating to speedy trial. See § 795.2, The Code; and authorities cited in State v. Jennings, 195 N.W.2d 351, 354 (Iowa 1972).

Insofar as pertinent here, § 795.1 provides:

"795.1 *Failure to indict.* When a person is held to answer for a public offense, if an indictment be not found against him within thirty days, the court must order the prosecution to be dismissed, unless good cause to the contrary be shown."

Although defendant was in fact incarcerated following January 3, 1972, the record discloses this was on an unrelated charge. The instant charge was first lodged by county attorney's information filed March 20, 1972. Trial commenced April 10, 1972 and was completed April 11, 1972.

Obviously it was not the legislative intent to immunize a defendant held to answer for a public offense from all subsequent charges on unrelated offenses. Nor was it the intent of the legislature to grant an incarcerated defendant the benefit of a 30 day statute of limitations on offenses unconnected with the one for which he was restrained. A § 795.1 dismissal is not mandated where the public offense for which a defendant is held to answer is unrelated to the one on which the allegedly late indictment or information is subsequently filed. State v. Dillon, 258 Iowa 784, 139 N.W.2d 925 (1966); State v. Satterfield, 257 Iowa 1193, 136 N.W.2d 257 (1965); see State v. Cennon, 201 N.W.2d 715 (Iowa, filed Oct. 18, 1972).

Trial court did not err in overruling defendant's motion to dismiss.

II. Defendant further assigns error based on trial court's refusal to instruct the jury he could not be found guilty unless he was served with a notice of nonpayment of the check at least ten days before criminal charges were filed. This alleged error is grounded on the provisions of § 713.4, The Code:

"713.4 *False drawing or uttering of checks.* As against the maker or drawer of a check * * * payment of which is refused by the drawee because of insufficient funds * * * the fact that payment of such check * * * has been refused * * * shall be prima facie evidence of intent to defraud and of knowingly not having an arrangement, understanding, or funds with such bank * * * sufficient to meet or pay the check * * * provided such maker or drawer shall not have paid the holder thereof the amount due thereon within ten days after receiving written notice by certified mail or notice in the manner of serving an original notice that such check * * * has not been paid by the drawee."

Defendant's ingenious rationale ignores the distinction between § 713.3, The

Code, which defines the crime of false drawing or uttering of checks, and § 713.4, which merely articulates an evidentiary rule. See State v. Johnson, 196 N.W.2d 563 (Iowa 1972); State v. Kulow, 255 Iowa 789, 123 N.W.2d 872 (1963); cf. State v. Brady, 121 Iowa 561, 97 N.W. 62 (1903); 29 Am.Jur.2d, Evidence § 126, pp. 157–59. Failure to pay the check after a ten-day notice is not an element of this crime. In State v. Johnson, supra, 196 N. W.2d at 565, we recognized those elements as:

"(1) [I]ntent to defraud; (2) securing money, credit or other thing of value by means of a check * * *; and (3) knowingly not having any arrangement, understanding, or funds with the bank * * * upon which the check * * * is drawn sufficient to meet or pay the same."

It follows the crime is committed when the check writer receives a thing of value, assuming all other elements are present. In State v. Kulow, supra, 255 Iowa at 793, 123 N.W.2d at 875 we said:

"But the intent must be decided as of the date the check was delivered and the property received. Repentance, even restitution, some eight months later came too late, so far as the criminal law is concerned."

Clearly, defendant could have been arrested on the date he wrote the check and obtained the car. The offense was then complete.

■ Although here defendant was served with a § 713.4 notice on March 29, 1972, the State did not rely on that notice nor did trial court instruct the jury on prima-facie evidence of intent and knowledge.

Defendant's position that every maker or drawer of a worthless check should be accorded ten days to make it good is untenable. He was not prejudiced by the State's election not to rely on § 713.4. This assignment of error is without merit.

■ III. Defendant next contends his motion for directed verdict should have been sustained because there was no showing he obtained anything of value. The proof failed, he argues, to show he ever obtained title to the Oldsmobile auto.

This case was tried below and presented here, by both parties, on the theory the State was required to show transfer of title. Without passing on that dubious premise, the evidence of transfer, partially related in the next division, was more than adequate to create a jury issue.

IV. A further error is assigned because trial court permitted the State to reopen (after it had initially rested its case) to introduce further evidence on the issue of the car title. At that point it had been twice testified (without objection) that defendant had received title to the car. After trial court sustained the motion to reopen, testimony was introduced that defendant was observed to have the title after the date of purchase. There was also received into evidence a certified instrument from the county treasurer's office showing transfer of title to defendant.

Both parties agree trial court has discretion to allow a litigant to reopen after he has rested. See rule 192, Rules of Civil Procedure:

"At any time before final submission, the court may allow any party to offer further testimony to correct an evident oversight or mistake, imposing such terms as it deems just."

See also State v. Moreland, 201 N.W.2d 713 (Iowa, filed Oct. 18, 1972). In this instance, however, defendant argues that discretion was abused because the State did not show mistake as a necessary foundation upon which to mount its motion.

We have allowed wide leeway in reviewing discretion of trial court in permitting a case to be reopened. In State v. Anderson, 209 Iowa 510, 228 N.W. 353 (1929) we found no error when the State was allowed to reopen for the purpose of showing ven-

ue. In State v. Terry, 199 Iowa 1221, 203 N.W. 232 (1925) we said it was not error to allow the State to reopen for further testimony by the prosecuting witness. We have further observed that even in the absence of statute we could see no tenable ground for denying existence of inherent court power to order reopening in the furtherance of justice. State v. Thomas, 158 Iowa 687, 138 N.W. 864 (1912).

■ The testimony introduced in this case after reopening was supplemental to and clarified previous evidence. It could arguably be deemed directed to an oversight, if not a mistake. We hold trial court's discretion in this respect was not abused.

■ V. Lastly, defendant complains trial court should have sustained his motion for directed verdict made at close of evidence in the proceeding to establish his status as an habitual criminal under § 747.-5, The Code. He asserts evidence introduced to identify him as defendant in the two prior convictions was secondary rather than best evidence.

In this case the State offered certified copies of the judgments in two prior convictions, and the original mittimus in each case. In-court identification of defendant as the same person convicted in those cases was accomplished through witnesses who had known him and connected him with those proceedings.

We have approved this type of identification when the challenge made here was not advanced at trial. State v. Girdler, 251 Iowa 1214, 102 N.W.2d 872 (1960); State v. Post, 251 Iowa 345, 99 N.W.2d 314 (1959); State v. Bolds, 244 Iowa 278, 55 N.W.2d 534 (1952). In considering the sufficiency of evidence of prior convictions we view such evidence in the light most favorable to the State. State v. McKay 256 Iowa 993, 129 N.W.2d 741 (1964).

But defendant argues the best identification would be an in-court comparison of defendant's photographs and fingerprints with those taken on the other convictions. Defendant cites no authority to support this contention, and we find none. Without concluding whether that method would in fact be preferable, we hold the usual evidence introduced here was sufficient to carry the issue of defendant's identification to the jury.

We have examined the entire record and find defendant had a fair trial. His conviction is affirmed.

Affirmed.