**Kenneth F. WALKER, Appellant,**

v.

**Lou V. BREWER, Warden Iowa State Prison, Appellee.**

**No. 54764.**

Supreme Court of Iowa.

Sept. 9, 1971.

George E. Wright, Fort Madison, for appellant.

Richard C. Turner, Atty. Gen., Richard N. Winders, Asst. Atty. Gen., Michael M. Phelan, and Sidney E. Drake, Deputy Lee County Attys., for appellee.

MASON, Justice.

Kenneth F. Walker, petitioner in a habeas corpus action, appeals from the trial court's denial of the writ. Walker had been sentenced by the Black Hawk district court to the state penitentiary for a term of 25 years following his plea of guilty to the charge of robbery with aggravation contrary to section 711.2, The Code. June 2, 1970, Walker filed petition for writ of habeas corpus in the Lee district court. Following an evidentiary hearing in which petitioner was represented by court-appointed counsel the writ was denied.

Walker asserts three grounds as a basis for his contention the court erred in denying his petition. He asserts being, (1) denied assistance of competent and effective counsel during pre-trial proceedings and on appeal, (2) misinformed as to matters of law by this court-appointed counsel when he was advised that he could be sentenced to 65 years if he didn't plead guilty and was, therefore, coerced into a guilty plea and (3) denied his right to an appeal.

Walker was arrested October 13, 1969, in Waterloo and charged with robbery with aggravation. The next day Stephen Peterson, a Waterloo attorney, was appointed as counsel for him. Peterson represented Walker before the magistrate and at arraignment. Walker says when Peterson did not come to see him at the jail for some period of time, he, Walker, asked the Black Hawk district court to appoint new counsel. This was done and from that time L. Don Snow, another Waterloo attorney, and Peterson served as attorneys for Walker through the sentencing stage.

December 16, Walker appeared in court with Mr. Snow, withdrew his earlier plea of not guilty and did himself enter a plea

of guilty to the charge of robbery with aggravation.

The following is a portion of the transcript of the proceeding before Judge Blair C. Wood of the Black Hawk district court at the plea stage:

"THE COURT: Would you stand, Mr. Walker. You are charged in this Information with robbery with aggravation. How do you plead to this charge?

"MR. WALKER: Guilty.

"THE COURT: And have you received any threats or promises to induce this plea of guilty?

"MR. WALKER: No.

"THE COURT: And by this plea you admit—have you read the Information?

"MR. WALKER: Yes, sir.

"THE COURT: And by this plea you admit to the factual statements in the Information, is that correct?

"MR. WALKER: Yes, sir.

"THE COURT: And you have been advised by your attorney, have you, as to the penalty which this charge carries or can carry?

"MR. WALKER: Yes, sir.

"THE COURT: What is that penalty, Mr. Snow?

"MR. SNOW: Twenty-five years, Your Honor.

"THE COURT: And you · understand, do you not, that the Court is not bound by anything which your attorney or the County Attorney may have said or any position they take?

"MR. WALKER: Yes, sir.

"THE COURT: All right. You may be seated. · I will enter the plea of guilty of the charge of robbery with aggravation."

January 5, 1970, sentence was imposed under section 711.2. The code section follows:

"Robbery with aggravation. If such offender at the time of such robbery is armed with a dangerous weapon, with intent, if resisted, to kill or maim the person robbed; or if, being so armed, he wound or strike the person robbed; or if he has any confederate aiding or abetting him in such robbery, present and so armed, he shall be imprisoned in the penitentiary for a term of twenty-five years."

February 13, petitioner perfected an appeal to this court.

February 19, Victor N. Kennedy, also a Waterloo attorney, was appointed to prosecute the appeal.

March 4, Kennedy filed application under supreme court rule 16 for permission to withdraw as Walker's counsel on appeal asserting in substance the appeal was frivolous and he could not in good conscience proceed further in the matter. Walker was notified of Kennedy's decision as to frivolity and specifically informed of the necessity to communicate to the Iowa Supreme Court his desire to proceed further with the appeal in the event he did not agree with counsel's decision. Walker received the notice but did not communicate to this court a desire to proceed further.

Pertinent parts of rule 16 of this court, based on the mandate in Anders v. California, 386 U.S. 738, 744-745, 87 S.Ct. 1396, 1400, 18 L.Ed.2d 493, 498, are set out, infra.

April 30, this court permitted Kennedy to withdraw from further participation in the appeal and after full examination of the proceedings and study of the record made an independent determination the appeal was *frivolous*, without merit and should be dismissed. It was so ordered.

Walker alleged in his June 2 petition for the writ he was restrained by respondent, warden of the state penitentiary, pursuant to a mittimus issued by the Black Hawk district court; that his detention was illegal for the reason (a) he was denied effective counsel during his pretrial proceed-

ings, (b) his plea was the result of duress produced by being misinformed by his attorneys as to matters of law which denied him due process and (c) he was denied assistance of competent and effective counsel in connection with his appeal.

June 8, the Lee district court appointed George G. Wright to act as attorney for Walker in connection with the evidentiary hearing on his petition for the writ. The case had been set for June 10 but was continued to afford Mr. Wright opportunity to prepare for trial.

September 23, after Wright advised the court he was prepared to proceed, the matter was set for hearing commencing October 12. At the conclusion of the proceeding that day the matter was continued until October 19 to permit Walker to offer testimony of witnesses who were unable to attend October 12. At the continued hearing the matter was completed and submitted. The ruling under attack in this appeal was filed October 26.

Walker testified his attorneys, Peterson, Snow and Kennedy, told him before he entered his guilty plea in the event he entered a not guilty plea and trial was necessary, "he would get 65 years." Petitioner maintains the attorneys, "told him he would be charged with being an habitual criminal." They said once he got 25 years it was just a matter of record for an additional 40 years to be added for being an habitual criminal which makes 65 years."

At the time of these alleged conversations in addition to the charge of robbery with aggravation, Walker was also charged with being an habitual criminal. We set out the Code section involved:

"747.1 Third conviction of felony. Whenever any person has been twice convicted of either of the crimes of burglary, robbery, forgery, counterfeiting, larceny where the value of the property stolen exceeded twenty dollars, or of breaking and entering, with intent to commit a public offense, any dwelling house, office, shop,

store, warehouse, railroad car, boat, vessel, or building, in which goods, merchandise, or valuable things, were kept for use, sale, or deposit, or has been convicted of two or more of said crimes, and shall thereafter be convicted of any one of such crimes, committed after such conviction, he shall be imprisoned in the penitentiary for any term not more than forty years."

Walker admitted on cross-examination he had been convicted of three felonies, breaking and entering in 1961 or 1962, armed robbery in 1962 or 1963 and assault with intent to commit great bodily injury in 1967. Walker estimated he had been convicted of four felonies, including the three just mentioned, but denied being convicted of three concurrent charges in 1968 of breaking and entering or robbery.

The petitioner explained the habitual criminal charge was dismissed after he entered his plea of guilty to robbery with aggravation "as part of the deal made if he plead guilty."

Walker's sister was the other witness offered by petitioner. She testified she recalled Snow saying if her brother plead guilty there was a chance the habitual criminal charge would be dropped. But if he didn't and there was a trial they would "give him habitual and he would get up to 65 years." The sister did not recall ever having met Mr. Peterson and said she talked to Kennedy for the first time after her brother's plea of guilty. She was present at only one of the conferences between Snow and her brother.

The respondent offered Mr. Snow as a witness who had been admitted to practice in Iowa in 1959 after graduating from University of Iowa law school. Snow had served one term as first assistant to the Black Hawk county attorney. He estimated he had represented more than a hundred defendants in criminal trials during his practice.

Snow testified that after he was assigned as Walker's counsel, he had from

eight to ten conferences with petitioner. Walker's relatives were present at six to eight of these meetings. Although Peterson was not present at all conferences, he attended most. He discussed with Walker possible defenses, talked with the prosecutor about possible solutions and interviewed witnesses who had been prosecutors at the time of the disposition of the felonies involved in the habitual criminal charge as to their ability to identify Walker. Snow was satisfied the State was prepared to prove, without difficulty, the habitual charge and expressed opinion the armed robbery charge could not be successfully defended in a jury trial. Snow denied he ever told Walker the total time he could receive on the habitual criminal charge could be 65 years and never heard Peterson or Kennedy tell Walker he would get 65 years. Snow further testified. Walker never mentioned to him in any of the conferences he had heard from anyone he could get a total of 65 years. In fact the figure of 65 years was never mentioned.

After Walker's personal plea of guilty of the crime of robbery with aggravation the habitual criminal charge was dismissed.

■ I. Petitioner argues his first two assignments of error in one division. The contention his detention is illegal is based on the proposition inadequacy of counsel is a constitutional defect which deprives the trial court of jurisdiction to proceed with the trial and sentence the accused. This court has repeatedly announced this principle. Buteaux v. Bennett, 256 Iowa 1068, 1071, 129 N.W.2d 651, 653; Birk v. Bennett, 258 Iowa 1016, 1019, 141 N.W.2d 576, 578; Scalf v. Bennett, 260 Iowa 393, 398–399, 147 N.W.2d 860, 864; Ashby v. Haugh, 260 Iowa 1047, 1054, 152 N.W.2d 228, 232, cert. den. 389 U.S. 1056, 88 S.Ct. 809, 19 L.Ed.2d 855; Larson v. Bennett, 160 N.W.2d 303, 308 (Iowa 1968), cert. den. 393 U.S. 1036, 89 S.Ct. 654, 21 L.Ed. 2d 581; Brewer v. Bennett, 161 N.W.2d 749, 751 (Iowa 1968); Kime v. Brewer, 182 N.W.2d 154, 156 (Iowa 1970).

■ It is true an involuntary or coerced plea will not support a judgment and sentence. Brewer v. Bennett, 161 N.W.2d at 751.

■ Walker's insistence his attorneys were ineffective and inadequate stems from his assertion the attorneys had misinformed him on a matter of law when they told him he could be sentenced to terms totaling 65 years upon conviction of robbery with aggravation and being an habitual criminal.

From this, petitioner argues his plea was involuntary and coerced by reason of this misinformation as to severity of punishment.

In State v. Rife, 260 Iowa 598, 149 N. W.2d 846, 847, cited by petitioner, we said:

"The decision how to plead, of course, is one for the defendant. The ultimate decision must be his, but of course before he can do so intelligently he is entitled to advice on the law of the crime charged and enlightened on the probable outcome of the trial, as well as the punishment he may receive. Since the plea of guilty effectively waives all defenses and objections, inadequacy of advice at the pleading stage cannot be later cured. * * *."

The petitioner had the burden of establishing his attorneys were inadequate. After a full evidentiary hearing, the trial court found he had failed to sustain this burden.

As the record reveals, there is a conflict whether Walker was told by any of his counsel he could be sentenced for terms not exceeding 65 years. In its ruling the court pointed out it was satisfied the statements were not made by Mr. Snow as charged by petitioner.

When there is a claim of denial of constitutional rights, ordinarily, we will accept and give effect to the trial court's determination of disputed facts if there is substantial evidence to support the trial court's finding. State v. Sefcheck, 261 Iowa 1159,

1170, 157 N.W.2d 128, 134, and citations and Ely v. Haugh, 172 N.W.2d 144, 147 (Iowa 1969).

The trial court was afforded opportunity to evaluate contradictory testimony given by Walker and his sister in support of the claim of misinformation as to ·severity of punishment and Snow's denial this fact occurred and to place his reliance on those whom he believed to have been telling the truth. The contradiction was resolved against defendant. There is substantial support in the record for the trial court's determination.

Petitioner's two assignments considered in this division are without merit.

■ II. Petitioner asserts in his remaining assignment he was denied his right to an appeal.

Mr. Kennedy carefully observed the pertinent provisions of rule 16 of this court after he had arrived at his decision of frivolity. We set out those provisions:

"Court Rule 16.

"(a) If counsel appointed to represent a convicted indigent defendant in an appeal to this court is convinced after conscientious investigation of the trial transcript that the appeal is frivolous and that he cannot, in good conscience, proceed with the appeal he may ask this court in writing to withdraw. This request must be accompanied by a brief referring to anything in the transcript that might arguably support the appeal.

"(b) Prior to filing any request to withdraw from an appeal counsel shall advise his client in writing of the decision as to frivolity accompanied by a copy of counsel's application and brief and attach to the request return showing service thereof. Counsel's notice to his client shall further advise him that if he agrees with counsel's decision and does not desire to proceed further with the appeal, defendant shall within thirty days from service of this application and brief clearly and expressly communicate such desire in writing, signed by him, to this court.

"(c) Receipt of such communication shall result in the appeal being forthwith dismissed.

"(d) Counsel's notice to his client shall further advise him that in the event he desires to proceed with the appeal he shall within the time above provided give like communication to this court, raising any points he chooses; this court will then proceed, after a full examination of all the proceedings, to decide whether the appeal is wholly frivolous. If it so finds, it may grant counsel's request to withdraw and dismiss the appeal.

"\* \* \*

"(g) Defendant's failure to communicate to this court within the time provided in this Rule or any extension thereof his disagreement with counsel's decision that the appeal is frivolous, or of defendant's desire to proceed with the appeal, shall be deemed an election by him to agree with counsel's decision.

"\* \* \*."

A contention similar to the one urged in this assignment was asserted in Toogood v. Brewer, 187 N.W.2d 748, 750 (Iowa 1971). In the cited case, after petitioner received notice of counsel's decision of frivolity, he filed in this court a document designated, "Affirmation of Intention to Proceed with Appeal." In rejecting the argument that petitioner had been denied effective assistance of counsel on appeal, we said counsel had carefully complied with the requirements of rule 16 "which was adopted based on the holding in Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493."

Much of what is said in the Toogood opinion supports our decision petitioner was not denied his right to an appeal.

The case is therefore

Affirmed.

All Justices concur.